[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 54, and the defendant wife 52, whose birth name is LaBruzzo, married on April 14, 1968 in New York City, Bronx County, New York State. This court has Jurisdiction of this dissolution action based on the Plaintiff's continuous residence in Connecticut for a year immediately preceding the filing of his complaint, returnable to August 5, 1997. Three children were born, all issue of the marriage and all now adults. The court finds the marriage has broken down irretrievably.
The plaintiff began a teaching career at Harrison High School in September, 1967 where he has continued until the time of trial which commenced on October 28, 1998. He is now head of the language department earning an annual salary of $95,000.00, the maximum attainable for the position, and other income bringing his total annually to $98,150.00.
The defendant has been employed by the Norwalk School system for 16 years, part-time for the initial ten and full-time for the more recent six years. The defendant's initial teaching assignments were in Yonkers and then in Port Chester until her first pregnancy. She then worked as a substitute teacher and as a tutor, working part-time in Darien as well while caring for the children.
The plaintiff has a vested pension for New York State teachers which will pay him $55,581.00 annually commencing on June 4, 1999. He also has three 403(b) accounts valued at $162,628.47, two $162,628.47, two bank accounts listed at $212.99 and a coin collection valued at $750.00.
The defendant lists three deferred compensation plans totaling $62,694.00, a Connecticut, State Teachers' Retirement Plan valued at $38,941.00 and bank accounts totaling $244.00.
The parties have owned the marital home located at one Old Witch Court, Rowayton since December, 1986. It was purchased upon sale of their initial home known as 5 Mystic Court, Norwalk. They agree that the current fair market value is $475,000.00. It is CT Page 730 encumbered by a first mortgage balance of $154,700.00 and a second mortgage of $96,000.00. The contents of the marital home are not valued by either party.
The plaintiff's liabilities consist of a loan from the Harrison Teachers F.C.U. of $13,620.00 which is paid by payroll deductions as the rate of $975.00 monthly, a Citibank master card balance of $4,846.00, a student loan of $2,620.00 and a MBNA master card balance of $15,801.00 being paid by the defendant.
The defendant does not list any debt to MBNA. She does list debts to Capital One for $2,557.00, Visa — ATT for $7,336.00, F. LaBruzzo for $14,000.00, F. LaBruzzo for $12,000.00, and Metropolitan Life for $7,190.00 which is a loan against her life insurance policy in the face amount of $5,000.00. She also lists Harrison Teachers FCU for $7,100.00 which the court infers is for 50% of the plaintiff's loan.
The plaintiff cashed in two IRA accounts and two life insurance policies within the six months prior to trial, raising $20,000.00 which he has spent on attorney's fees. On September 8, 1997 the court accepted a written stipulation and so ordered it on motion (#102) to enjoin either party from dissipating or transferring assets.
The parties filed a second stipulation dated October 6, 1997 (#111), (Plaintiff's Exhibit #1) which was approved but not made a court order by the court. It covered living expenses for the final three months of 1997.
The plaintiff claims the marriage has broken down due to the defendant's lack of interest in intimacy as early as 1990, including her rejection of his advances. During this time period the plaintiff befriended another teacher, Teresa, and the relationship ripened into an adulterous affair that has continued. The plaintiff has been living with his paramour since he vacated the family home in April, 1988. The court concludes that the primary cause of the marriage breakdown is the plaintiff's adulterous affair. It is not necessary to detail the plaintiff's activities in carrying on the affair for the evidence was clear.
The plaintiff submitted a list of personal property (Plaintiff's Exhibit #2) concerning which testimony was taken. CT Page 731
Both parties enjoy good health.
Having reviewed the evidence in light of § 46b-81, §46b-82, and relevant case law the court enters the following decree.
1. Judgement is entered on the cross-complaint dissolving the marriage on the ground of irretrievable breakdown. Each party is declared unmarried. The complaint is dismissed as now moot.
2. The marital residence shall be immediately placed on the market for sale. If the parties cannot agree upon a listing broker or other particulars of sale either may move this court for an articulation. Until sold, the defendant shall have exclusive possession of the premises. Upon closing of title and after payment of the encumbrances, commission, legal costs, conveyance taxes, or other costs incurred incident to the marketing and sale of the premises, the net proceeds are ordered applied as follows:
 a) The liabilities listed on each party's financial affidavit shall be paid in full.
 b) $20,000.00 shall be paid to the defendant as an allowance to defend the complaint and to prosecute the cross-complaint.
 c) The remaining funds shall be divided 45% to the plaintiff and 55% to the defendant.
Until closing of title the parties shall continue to carry the premises by continuing their pendente arrangement with the plaintiff contributing 60% and the defendant contributing 40%. It is noted that both parties' claims for relief request this. The contents of the home are awarded to the defendant.
3. The defendant is awarded $200.00 per week periodic alimony, payable by the plaintiff until the death of either party, the defendant's remarriage or future court order. The provisions of § 46b-86 apply to this order. An immediate wage withholding is ordered pursuant to law. The initial payment of alimony shall be due on the first Friday of the month following the date of closing of title.
4. The defendant shall retain as her own separate estate, CT Page 732 free from any claim or demand of the plaintiff, the following, to wit:
a. Mass. Fin. IRA, value approximately $4,470.00 (10/13/98);
b. Safeco annuity, value approximately $58,181.28 (9/30/98);
c. TIAA/CREF, value approximately $312.56 (9/30/98)
The plaintiff shall retain as his own separate estate, free from any claim or demand of the defendant, the following, to wit:
a. Hartford TSA;
b. Royal TSA #1;
c. Royal TSA #2
5. The parties shall divide the respective pensions (New York State Teachers' Retirement System and Connecticut State Teachers' Retirement System) by way of Qualified Domestic Relations Orders, each transferring to the other a monthly benefit equal to one-half of the monthly retirement benefit as entitled as of the date of dissolution, together with any joint and survivor death benefits as of the date of dissolution. The court retains jurisdiction to effect this order.
6. Any refund of taxes to be received due to joint tax returns filed or to be filed shall be divided equally between the parties.
Counsel for the defendant is directed to prepare the judgement filed. Both parties' counsels shall cooperate in effecting the pension transfers.
HARRIGAN, J.